**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT LEE JONES<br>1266 NEW HAMPSHIRE AVE. NW<br>WASHINGTON, DC 20026 | ) | |
| And | ) | |
| CAROLYN M. MARTIN<br>1266 NEW HAMPSHIRE AVE. NW<br>WASHINGTON, DC 20026 | ) | |
| Plaintiffs | ) | CASE NO: |
| v. | ) | |
| BLUE EAGLE INDUSTRIES, INC.<br>2536 YOUNGS DRIVE<br>HAYMARKET VIRGINIA 20169 | ) | |
| Defendant | ) | |

**COMPLAINT**

Come now the Plaintiffs, Robert Lee Jones (hereafter referred to as "Mr. Jones") and Carolyn Martin (hereafter referred to as "Ms. Martin") by and through their attorneys James R. Schraf and Logan Russack, LLC and sues the Defendant, Blue Eagle Industries, Inc. (hereafter referred to as "Blue Eagle") and for its reasons states as follows:

**The Parties**

1. Blue Eagle Industries Inc. is a corporation engaged in the business of equipment supply to private and governmental buyers, and a borrower of loans extended by Robert Lee Jones and Carolyn Martin.

2. Robert Lee Jones, individually and jointly with Carolyn Martin, is a private lender to Blue Eagle.

**Jurisdiction and Venue**

3. Blue Eagle is a corporation organized in the state of Virginia, with its primary place of business in Virginia.

4. Robert Jones and Carolyn Martin are residents of the District of Columbia.

5. Pursuant to 28 USC §1332, this court has jurisdiction over this matter on diversity grounds and the amount in controversy exceeds $75,000.00.

6. Section 10.10 of the Security Agreement governing loans to Blue Eagle dictates: "*THIS AGREEMENT IS INTENDED TO TAKE EFFECT AS A SEALED INSTRUMENT AND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK OR THE DISTRICT OF COLUMBIA, AS ELECTED BY THE INVESTOR IN ITS SOLE DISCRETION, WITHOUT REGARD TO THE CONFLICT OF LAW RULES THEREOF. Blue Eagle agrees that any action or claim arising out of, or any dispute in connection with, this Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof, may be brought in the courts of the State or any federal court sitting therein and consent*

*to the non-exclusive jurisdiction of such court and to service of process in any such suit being made upon Blue Eagle by mail at the address first above noted. Blue Eagle hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court."* *See* Exhibit A, Blue Eagle Security Agreement.

7. Venue in the United States District Court for the District of Columbia is therefore proper and provided for by agreement of the parties.

**Introductory Facts**

8. Pursuant to a promissory note signed on April 25, 2006, Blue Eagle Industries borrowed a Principal Sum of $125,000.00 from Mr. Jones, to be repaid with interest in the amount of $153,125.00, on or before April 25, 2007. *See* Exhibit B, Promissory Note dated April 25, 2006.

9. Pursuant to a second promissory note signed on April 27, 2006, Blue Eagle Industries borrowed a Principal Sum of $75,000.00 from Mr. Jones and Ms. Martin, to be repaid with interest in the amount of $84,571.00, on or before April 28, 2007. *See* Exhibit C, Promissory Note dated April 27, 2006.

10. Blue Eagle was notified by certified mail on March 6, 2007 that the loans of $153,125.00 and $84,571.00 were due to be repaid to Mr. Jones on April 25, 2007 and April 28, 2007 and respectively, and that no extension or renewal would be granted. *See* Exhibit D, March 6, 2007 Letter to David Thornton.

**Count One (Breach of Contract)**

11. The Blue Eagle Security Agreement (hereafter "Security Agreement") on the two loans extended by Mr. Jones dictates in §10.1(a): *"The occurrence of any of the following will be deemed to be an "Event of Default" upon election by the Investor ... (a) Payment Default. Blue Eagle or the Company shall fail to make any payment of principal or interest when due in respect of the Investment."* *See* Exhibit A, Blue Eagle Security Agreement.

12. On April 25th and April 27th 2007, Blue Eagle defaulted on both loans extended by Mr. Jones due to non-payment of the principal and interest. These debts, in excess of $237,696.00, remain unpaid today.

WHEREFORE, the Plaintiffs, Robert Jones and Carolyn Martin, demand judgment of, and from, the Defendant, Blue Eagle Industries, Inc. for breach of contract as follows:

a) Compensatory damages including the principal amount of Jones' loans plus all accrued and unpaid interest thereon in the amount of ($237,696.00);

b) Prejudgment interest at the legal rate;

c) Attorneys' fees; and

d) Post judgment interest at the legal rate.

James R. Schraf, 406645
Logan Russack, LLC
2530 Riva Road, Suite 308
Annapolis, Maryland 21401
(410) 571-2780
Attorney for Plaintiffs,
Robert Lee Jones and Carolyn Martin

# EXHIBIT

# A



BLUE EAGLE INDUSTRIES, INC.

SECURITY AGREEMENT

THIS SECURITY AGREEMENT, dated April 25, 2005, by and among,

**Blue Eagle Industries, Inc**, a Virginia corporation located at 2536 Youngs Drive, Haymarket, Virginia, 20169. ("Blue Eagle"),

**Craigdarloch Holdings Inc.**, a Delaware corporation having an office at Suite 5809 – 350 Fifth Avenue, New York, New York 10118. (the "Secured Party"), and

**Mr. Robert Lee Jones**, a businessman having an office at 1266 New Hampshire Avenue NW, Washington, District of Columbia, 20036. (the "Investor")

**WHEREAS**, Blue Eagle has entered into an amended Loan Agreement dated as of October 1, 2004, with the Secured Party (the "Loan Agreement");

**WHEREAS**, Blue Eagle granted a security interest in favor of Craigdarloch Holdings Ltd., the parent company, of the Secured Party, by a Security Agreement dated October 1, 2004, which was assumed by the Secured Party and amended and restated (the "Security Agreement");

**WHEREAS**, the Secured Party has arranged for further financing, both for the dedicated benefit of Blue Eagle, from:

a. a SEP-IRA administered by Fiserve of Colorado on behalf of The Investor, and;

b. a personal investment by the Investor and Ms. Carolyn M. Martin

**AND WHEREAS**, Blue Eagle and the Secured Party have agreed to amend the Security Agreement dated October 1, 2004, as amended and restated, as herein provided,

**NOW, THEREFORE**, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Grant of Security Interest</u>. The Secured Party hereby assigns all its right and interest in and to the Collateral as hereinafter defined, to the Secured Party for the behalf of The Investor, and Blue Eagle hereby affirms the Secured Party's rights and interests and consents to and affirms the grant of the Collateral, for the benefit of The Investor, to secure the payment and performance in full of all of the obligations under the advancement of funds to Blue Eagle secured by two Promissory Notes, in substantially the form attached as Exhibit A , (the "Obligations"). The security interest in and so pledged and assigned to The Investor, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, are generally for all accounts receivable of Blue Eagle including:

> deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), and any other contract rights (with the exception of Government Contracts) and rights to the payment of money, insurance claims and proceeds, including all payment intangibles.
>
> (all of the same being hereinafter called the "Collateral")

2. Other Actions. To further the attachment, perfection and first priority of, and the ability of the Secured Party to enforce the security interest in the Collateral for the benefit of The Investor, and without limitation on Blue Eagle's other obligations in this Agreement, Blue Eagle agrees, in each case at Blue Eagle's expense, to take the following actions with respect to the following Collateral:

2.1 Deposit Accounts. For each deposit account that Blue Eagle at any time opens or maintains, Blue Eagle shall, pursuant to an agreement in form and substance satisfactory to the The Investor and the Secured Party, cause the depositary bank to comply at any time following the Maturity Date of the Obligations with instructions from the Secured Party to such depositary bank directing the disposition of funds from time to time credited to such deposit account, up to the amount then outstanding and payable on the Obligations, without further consent of Blue Eagle. The amount then outstanding and payable on the Obligations shall be as requested by The Investor and as affirmed by the Secured Party, in the Secured Party's sole discretion. The Secured Party agrees with Blue Eagle that the Secured Party shall not give any such instructions or withhold any withdrawal rights from Blue Eagle, unless an Event of Default has been alleged by The Investor. The provisions of this paragraph shall not apply to (i) any deposit account for which Blue Eagle, the depositary bank and the Secured Party have entered into a cash collateral agreement specially negotiated among Blue Eagle, the depositary bank and the Secured Party for the specific purpose set forth therein, (ii) a deposit account for which the Secured Party is the depositary bank and is in automatic control, and (iii) deposit accounts specially and exclusively used for payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of Blue Eagle's salaried employees.

3. Representations and Warranties Concerning Blue Eagle's Legal Status. Blue Eagle represents and warrants to The Investor as follows: (a) Blue Eagle's exact legal name is set forth in Schedule A attached hereto ("Schedule A"), (b) Blue Eagle is an organization of the type, and is organized in the jurisdiction set forth in Schedule A, (c) Schedule A accurately sets forth Blue Eagle's organizational identification number or accurately states that Blue Eagle has none, (d) Schedule A accurately sets forth Blue Eagle's place of business or, if more than one, its chief executive office, as well as Blue Eagle's mailing address, if different, (e) all other information set forth Schedule A pertaining to Blue Eagle is accurate and complete.

4. Covenants Concerning Blue Eagle's Legal Status. Blue Eagle covenants with The Investor as follows: (a) without providing at least 30 days prior written notice to the Secured Party, Blue Eagle will not change its name, its place of business or, if more than one, chief executive office, or its mailing address or organizational identification number if it has one, (b) if Blue Eagle does not have an organizational identification number and later obtains one, Blue Eagle shall forthwith notify the Secured Party of such organizational identification number, and (c) Blue Eagle will not change its type of organization, jurisdiction of organization or other legal structure.

5. Representations and Warranties Concerning Collateral. Blue Eagle further represents and warrants to the Secured Party and The Investor as follows: (a) Blue Eagle is the owner of the Collateral, free from any right or claim or any person or any adverse lien, security interest or other encumbrance, except for the security interest created by the Security Instrument with the Secured Party and this Agreement, (b) none of the Collateral constitutes, or is the proceeds of, "farm products" as defined in Section 9-102(a)(34) of the Uniform Commercial Code of the State, (c) Blue Eagle holds no commercial tort claim except as indicated on Schedule A, (d) Blue Eagle has at all times operated its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances, and (e) all other information set forth on Schedule A pertaining to the Collateral is accurate and complete.

6. Covenants Concerning Collateral.

6.1 Blue Eagle further covenants with The Investor as follows: (a) except for the security interest granted to the Secured Party and herein granted, Blue Eagle shall be the owner of the Collateral free from any right or claim of any other person, lien, security interest or other encumbrance, and Blue Eagle shall defend the same against all claims and demands of all persons at any time claiming the same or any interests therein adverse to the Secured Party or The Investor, (b) Blue Eagle shall not pledge, mortgage or create, or suffer to exist any right of any person in or claim by any person to the Collateral, or any security interest, lien or encumbrance in the Collateral in favor of any person, other

than the Secured Party, (c) Blue Eagle will pay promptly when due all taxes, assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of such Collateral or incurred in connection with this Agreement, (d) Blue Eagle will continue to operate, its business in compliance with all applicable provisions of the federal Fair Labor Standards Act, as amended, and with all applicable provisions of federal, state and local statutes and ordinances dealing with the control, shipment, storage or disposal of hazardous materials or substances, and (d) Blue Eagle will not sell or otherwise dispose, or offer to sell or otherwise dispose, of the Collateral or any interest therein except for the Security Agreement with the Secured Party.

6.2 The Secured Party hereby covenants with The Investor that (a) the Secured Party shall not pledge, mortgage or create, or suffer to exist any right of any person in or claim by any person to the Collateral, or any security interest, lien or encumbrance in the Collateral in favor of any person, other than the Secured Party and The Investor, without the prior written consent of The Investor, and (b) that the Secured Party will subordinate its security in and to the Collateral to The Investor interest and security, to the extent of the full payment and performance of amounts outstanding under the Notes.

7. Insurance.

7.1 Maintenance of Insurance. Blue Eagle will maintain with financially sound and reputable insurers insurance with respect to its properties and business against such casualties and contingencies as shall be in accordance with general practices of businesses engaged in similar activities in similar geographic areas. Such insurance shall be in such minimum amounts that Blue Eagle will not be deemed a co-insurer under applicable insurance laws, regulations and policies and otherwise shall be in such amounts, contain such terms, be in such forms and be for such periods as may be reasonably satisfactory to the Secured Party. In addition, all such insurance shall be payable to the Secured Party as loss payee. Without limiting the foregoing, Blue Eagle will (i) keep all of its physical property insured with casualty or physical hazard insurance on an "all risks" basis, with broad form flood and earthquake coverages and electronic data processing coverage, with a full replacement cost endorsement and an "agreed amount" clause in an amount equal to 100% of the full replacement cost of such property, (ii) maintain all such workers' compensation or similar insurance as may be required by law, and (iii) maintain, in amounts and with deductibles equal to those generally maintained by businesses engaged in similar activities in similar geographic areas, general public liability insurance against claims of bodily injury, death or property damage occurring, on, in or about the properties of Blue Eagle; business interruption insurance; and product liability insurance.

7.2 Insurance Proceeds. The proceeds of any casualty insurance in respect of any casualty loss of any of the Collateral shall, subject to the rights, if any, of other parties with an interest having priority in the property covered thereby, (i) so long as no Event of Default has occurred and is continuing and to the extent that the amount of such proceeds is less than $50,000.00, be disbursed to Blue Eagle for direct application by Blue Eagle solely to the repair or replacement of Blue Eagle's property so damaged or destroyed, and (ii) in all other circumstances, be held by the Secured Party as cash collateral for the Obligations. The Secured Party may, at its sole option, disburse from time to time all or any part of such proceeds so held as cash collateral, upon such terms and conditions as the Secured Party may reasonably prescribe, for direct application by Blue Eagle solely to the repair or replacement of Blue Eagle's property so damaged or destroyed, or the Secured Party may apply all or any part of such proceeds to the Obligations.

7.3 Continuation of Insurance. All policies of insurance shall provide for at least thirty (30) days prior written cancellation notice to the Secured Party. In the event of failure by Blue Eagle to provide and maintain insurance as herein provided, the Secured Party may, at its option, provide such insurance and charge the amount thereof to Blue Eagle. Blue Eagle shall furnish the Secured Party with certificates of insurance and policies evidencing compliance with the foregoing insurance provision.

8. Collateral Protection and Expenses.

8.1 Secured Party's Obligations and Duties. Anything herein to the contrary notwithstanding, Blue Eagle shall remain obligated and liable under each contract or agreement comprised in the Collateral to be observed or performed by Blue Eagle thereunder. Neither the Secured Party nor The Investor shall have any obligation nor liability under any

such contract or agreement by reason of or arising out of this Agreement, nor by the receipt by the Secured Party or The Investor of any payment relating to any of the Collateral, nor shall the Secured Party nor The Investor be obligated in any manner to perform any of the obligations of Blue Eagle under or pursuant to any such contract or agreement, to make inquiry as to the nature or sufficiency of any payment received by the Secured Party in respect of the Collateral or as to the sufficiency of any performance by any party under any such contract or agreement, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to the Secured Party or The Investor, or to which the Secured Party or The Investor may be entitled at any time or times. The Secured Party's sole duty with respect to the custody, safe keeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Uniform Commercial Code of the State or otherwise, shall be to deal with such Collateral in the same manner as the Secured Party deals with similar property for its own account.

8.2 Notification to Account Blue Eagles and Other Persons Obligated on Collateral. If an Event of Default shall have occurred and be continuing, Blue Eagle shall, at the request and option of the Secured Party or The Investor, notify account debtors and other persons obligated on any of the Collateral of the security interest of the Secured Party in any account, chattel paper, general intangible, instrument or other Collateral and that payment thereof is to be made directly to the Secured Party or The Investor, or to any financial institution designated by the Secured Party, or by The Investor, as the Secured Party's agent, or The Investor' agent, therefor, and the Secured Party may itself, if an Event of Default shall have occurred and be continuing, without notice to or demand upon Blue Eagle, so notify account debtors and other persons obligated on Collateral. After the making of such a request or the giving of any such notification, Blue Eagle shall hold any proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by Blue Eagle as trustee for the Secured Party or The Investor without commingling the same with other funds of Blue Eagle and shall turn the same over to the Secured Party, or The Investor, in the identical form received, together with any necessary endorsements or assignments. The Secured Party shall apply the proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by the Secured Party to the Obligations, such proceeds to be immediately credited after final payment in cash or other immediately available funds of the items giving rise to them.

The Secured Party and The Investor agree that they will account to each other for all funds received from or on behalf of Blue Eagle hereunder.

9 Power of Attorney

9.1 Appointment. Blue Eagle hereby irrevocably constitutes and appoints the Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Blue Eagle or in the Secured Party's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or useful to accomplish the purposes of this Agreement.

9.2 Ratification by Blue Eagle. To the extent permitted by law, Blue Eagle hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and is irrevocable.

9.3 No Duty on Secured Party. The powers conferred on the Secured Party hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers except as provided herein. The Secured Party shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to Blue Eagle or The Investor for any act or failure to act, except for the Secured Party's own gross negligence or willful misconduct.

*[continued next page]*

10. Rights and Remedies.

10.1 Events of Default. The occurrence of any of the following will be deemed to be an "*Event of Default*" upon election by the Investor (except for an Event of Default under Section 10.1(d) which shall be an immediate and automatic Event of Default):

(a) **Payment Default.** Blue Eagle or the Company shall fail to make any payment of principal or interest when due in respect of the Investment.

(b) **Covenant Default.** Blue Eagle or the Company shall default in the performance of, or violate any of, the covenants or agreements contained in the Investment Documents.

(c) **Breach of Warranty.** Any representation, warranty or certificate made or furnished by the Company or Blue Eagle to the Investor in connection with the Investment Documents shall be false, incorrect or incomplete in any material respect when made.

(d) **Bankruptcy or Insolvency.** A proceeding shall have been instituted in a court having jurisdiction over the Company or Blue Eagle seeking a decree or order for relief, in an involuntary case under any applicable bankruptcy, insolvency reorganization or other similar law and such involuntary case shall remain undismissed or unstayed and in effect for a period of 60 consecutive days, or the Company or Blue Eagle shall commence a voluntary case under any such law or consent to the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator, conservator (or other similar official).

(e) **Other Default.** The occurrence of an Event of Default as defined in the Notes or the Blue Eagle Amendment, as applicable.

10.2 Notification of Event of Default. The Company shall be obligated to provide the Investor with written notice immediately upon the occurrence of any of the events referenced in Section 10.1(a)-(e) above.

10.3 Right and Remedies. If an Event of Default shall have occurred and be continuing, the Secured Party, without any other notice to or demand upon Blue Eagle have in any jurisdiction in which enforcement hereof is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of the State and any additional rights and remedies which may be provided to a secured party in any jurisdiction in which Collateral is located, including, without limitation, the right to take possession of the Collateral, and for that purpose the Secured Party may, so far as Blue Eagle can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom. The Secured Party may in its discretion require Blue Eagle to assemble all or any part of the Collateral at such location or locations within the jurisdiction(s) of Blue Eagle's principal office(s) or at such other locations as the Secured Party may reasonably designate. Blue Eagle waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of the Secured Party's rights and remedies hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights and remedies with respect thereto.

10.4 Standards for Exercising Rights and Remedies. To the extent that applicable law imposes duties on the Secured Party to exercise remedies in a commercially reasonable manner, Blue Eagle acknowledges and agrees that it is not commercially unreasonable for the Secured Party (a) to fail to incur expenses reasonably deemed significant by the Secured Party to prepare Collateral for disposition or otherwise to fail to complete raw material or work in process into finished goods or other finished products for disposition, (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of, (c) to fail to exercise collection remedies against account debtors or other persons obligated on Collateral or to fail to remove liens or encumbrances on or any adverse claims against Collateral, (d) to exercise collection remedies against account debtors and other persons obligated on Collateral directly or through the use of collection agencies and other collection specialists, (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (f) to contact other persons, whether or not in the same business as Blue Eagle, for expressions of interest in acquiring all or any portion of the Collateral, (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the collateral is of a specialized nature, (h) to dispose of Collateral by utilizing Internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable

capability of doing so, or that match buyers and sellers of assets, (i) to dispose of assets in wholesale rather than retail markets, (j) to disclaim disposition warranties, (k) to purchase insurance or credit enhancements to insure the Secured Party against risks of loss, collection or disposition of Collateral or to provide to the Secured Party a guaranteed return from the collection or disposition of Collateral, or (l) to the extent deemed appropriate by the Secured Party, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist the Secured Party in the collection or disposition of any of the Collateral. Blue Eagle acknowledges that the purpose of this Section 15 is to provide non-exhaustive indications of what actions or omissions by the Secured Party would fulfill the Secured Party's duties under the Uniform Commercial Code or other law of the State or any other relevant jurisdiction in the Secured Party's exercise of remedies against the Collateral and that other actions or omissions by the Secured Party shall not be deemed to fail to fulfill such duties solely on account of not being indicated in this Section 15. Without limitation upon the foregoing, nothing contained in this Section 15 shall be construed to grant any rights to Blue Eagle or to impose any duties on the Secured Party that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section 15.

10.5 No Waiver by Secured Party. The Secured Party shall not be deemed to have waived any of its rights or remedies in respect of the Obligations or the Collateral unless such waiver shall be in writing and signed by the Secured Party. No delay or omission on the part of the Secured Party in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All rights and remedies of the Secured Party with respect to the Obligations or the Collateral, whether evidenced hereby or by any other instrument or papers, shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as the Secured Party deems expedient.

10.6 Suretyship Waivers by Blue Eagle. Blue Eagle waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description. With respect to both the Obligations and the Collateral, Blue Eagle assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of or failure to perfect any security interest in any Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the settlement, compromising or adjusting of any thereof, all in such manner and at such time or times as the Secured Party may deem advisable. The Secured Party shall have no duty as to the collection or protection of the Collateral or any income therefrom, the preservation of rights against prior parties, or the preservation of any rights pertaining thereto beyond the safe custody thereof as set forth in Section 10.2. Blue Eagle further waives any and all other suretyship defenses.

10.7 Marshalling. The Secured Party shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, Blue Eagle hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Secured Party's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, Blue Eagle hereby irrevocably waives the benefits of all such laws.

10.8 Proceeds of Dispositions; Expenses. Blue Eagle shall pay to the Secured Party and The Investor on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by the Secured Party and The Investor in protecting, preserving or enforcing the Secured Party's and The Investor' rights and remedies under or in respect of any of the Obligations. After deducting all of said expenses, the residual proceeds of collection or disposition of the Collateral shall, to the extent actually received in cash, be applied firstly to the payment of the Notes. In the absence of final payment and satisfaction in full of all of the Obligations, Blue Eagle shall remain liable for any deficiency.

10.9 Overdue Amounts. Until paid, all amounts due and payable by Blue Eagle hereunder shall be a debt secured by the Collateral and shall bear, whether before or after judgment, interest at the Interest Rate set forth in the Loan Agreement].

10.10 Governing Law; Consent to Jurisdiction. THIS AGREEMENT IS INTENDED TO TAKE EFFECT AS A SEALED INSTRUMENT AND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK OR THE DISTRICT OF COLUMBIA, AS ELECTED BY THE INVESTOR IN ITS SOLE DISCRETION WITHOUT REGARD TO THE CONFLICT OF LAW RULES THEREOF (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW. Blue Eagle agrees that any action or claim arising out of, or any dispute in connection with, this Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof, may be brought in the courts of the State or any federal court sitting therein and consents to the non-exclusive jurisdiction of such court and to service of process in any such suit being made upon Blue Eagle by mail at the address specified in Section 17 of the Loan Agreement. Blue Eagle hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court.

10.11 Waiver of Jury Trial. BLUE EAGLE WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS, REMEDIES, OBLIGATIONS, OR DUTIES HEREUNDER, OR THE PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF. Except as prohibited by law, Blue Eagle waives any right which it may have to claim or recover in any litigation referred to in the preceding sentence any special, exemplary, punitive or consequential damages or any damages other than, or in addition to, actual damages. Blue Eagle (i) certifies that neither the Secured Party nor any representative, agent or attorney of the Secured Party has represented, expressly or otherwise, that the Secured Party would not, in the event of litigation, seek to enforce the foregoing waivers or other waivers contained in this Agreement, and (ii) acknowledges that, in entering into the Loan Agreement and the other Loan Documents, the Secured Party is relying upon, among other things, the waivers and certifications contained in this Section 22.

11. Miscellaneous.

11.1 The headings of each section of this Agreement are for convenience only and shall not define or limit the provisions thereof. This Agreement and all rights and obligations hereunder shall be binding upon Blue Eagle and its respective successors and assigns, and shall inure to the benefit of the Secured Party and its successors and assigns. If any term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Agreement shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein. Blue Eagle acknowledges receipt of a copy of this Agreement.

11.2 Blue Eagle and The Investor acknowledge and agree that they have been encouraged and advised to seek independent legal counsel in respect of this Security Agreement, and that they are experienced and knowledgeable businessmen in this regard.

11.3 Blue Eagle and Secured Party hereby provide further assurances to The Investor that each of Blue Eagle and the Secured Party will do all things reasonably necessary and sign all documents to better comply with the requirements of the First Trust SEP-IRA account on behalf of The Investor, with respect to the funds advanced by The Investor to the benefit of Blue Eagle, and the intent of the security granted hereunder, including collection and remedies for default of Blue Eagle

*[continued on next page]*

11.4 Blue Eagle and the Secured Party agree and confirm that all other rights and obligations of the Security Agreement remain binding and in good order and full effect.

IN WITNESS WHEREOF, intending to be legally bound, Blue Eagle and the Secured Party have caused this Agreement to be duly executed as of the date first above written.

DEBTOR:

**Blue Eagle Industries, Inc.**

Per: ______________________
Dave Thornton, President

ACCEPTED BY:

SECURED PARTY Craigdarloch Holdings, Inc.

Per: ______________________
Craig Watson, President

INVESTOR

______________________
Mr. Robert Lee Jones

# EXHIBIT

# B



# PROMISSORY NOTE

## BLUE EAGLE INDUSTRIES, INC.

$125,000.00

April 25, 2006

Haymarket, Virginia

**FOR VALUE RECEIVED, BLUE EAGLE INDUSTRIES, INC.**, Virginia corporation (the "*Borrower*") promises to pay to **Fiserve Trust Company for the benefit of Mr. Robert Lee** or its assigns ("*Holder*")

the principal sum of: **$125,000.00** (the "*Principal*")

with simple interest on the outstanding principal amount at the rate of **twenty two and one-half percent (22.5%)** per annum. Interest shall commence with the date hereof and shall continue on the outstanding principal until paid in full.

1. <u>Application of Payments.</u> All payments of interest and principal shall be in lawful money of the United States of America and all payment under the Notes shall be made simultaneously to all Holders. All payments shall be applied first to accrued interest, and thereafter to principal.

2. <u>Maturity Date.</u> The entire outstanding principal balance and all unpaid accrued interest under this Note shall become fully due and payable on **(April 25, 2007)** (the "*Maturity Date*")in the amount of **$153,125.00** of Principal and accrued interest.

3. <u>Prepayment.</u> Borrower may not prepay this Note prior to the Maturity Date without the consent of the Lender.

4. <u>Event of Default.</u> Upon the occurrence of an event of default hereunder, Borrower shall pay all reasonable attorneys' fees and court costs incurred by Holder in enforcing and collecting this Note.

5. <u>Waiver.</u> Borrower hereby waives demand, notice, presentment, protest, notice of protest and notice of dishonor. The right to plead any and all statutes of limitations as a defense to any demands hereunder is hereby waived to the full extent permitted by law.

6. <u>Governing Law.</u> This Note shall be governed by construed and under the laws of the New York, as applied to agreements among New York residents, made and to be performed entirely within the New York, without giving effect to conflicts of laws principles.

7. <u>Amendment; Waiver.</u> Any term of this Note may be amended or waived with the written consent of Borrower and the Lender.

8. <u>Successors and Assigns.</u> The provisions of this Note shall inure to the benefit of and be binding on any successor to Borrower and shall extend to any holder hereof.

9. <u>No Set-Off or Counterclaim.</u> This Note is not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Holder, including the defense of usury, and the operation of any of the terms of the Loan, or the exercise of any right thereunder, will not render the Note unenforceable, in whole or in part, or be subject to a right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Holder has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

10. <u>Transfer.</u> Subject to the restrictions on transfer within the terms of the Agreement, this Note may be transferred only upon its surrender to the Borrower for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Borrower. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Borrower's obligation to pay such interest and principal.

**IN WITNESS WHEREOF**, the parties have executed this PROMISSORY NOTE as of the date first written above.

BLUE EAGLE INDUSTRIES, INC.

Per: ______________________
David Thornton
CEO

# EXHIBIT

# C



# PROMISSORY NOTE OF
# BLUE EAGLE INDUSTRIES, INC.

$75,000.00

April 27, 2006

Haymarket, Virginia

**FOR VALUE RECEIVED, BLUE EAGLE INDUSTRIES, INC.**, Virginia corporation (the "*Borrower*") promises to pay to **Mr. Robert Lee Jones** and **Ms. Carolyn M. Martin**, jointly, or their assigns ("*Holder*")

the principal sum of: **$75,000.00** [the "*Principal*"]

with simple interest on the outstanding principal amount at the rate of **twelve percent (12%)** per annum. Interest shall commence with the date hereof and shall continue on the outstanding principal until paid in full. Interest shall be computed on the basis of a year of 360 days.

**1.** <u>Application of Payments.</u> All payments of interest and principal shall be in lawful money of the United States of America and all payment under the Notes shall be made simultaneously to all Holders. All payments shall be applied first to accrued interest, and thereafter to principal.

**2.** <u>Maturity Date.</u> The entire outstanding principal balance and all unpaid accrued interest under this Note shall become fully due and payable on **(April 28, 2007)** (the "*Maturity Date*")in the amount of **$84,000.00** of Principal and accrued interest.

**3.** <u>Prepayment.</u> Borrower may not prepay this Note prior to the Maturity Date without the consent of the Lender.

**4.** <u>Event of Default.</u> Upon the occurrence of an event of default hereunder, Borrower shall pay all reasonable attorneys' fees and court costs incurred by Holder in enforcing and collecting this Note.

**5.** <u>Waiver.</u> Borrower hereby waives demand, notice, presentment, protest, notice of protest and notice of dishonor. The right to plead any and all statutes of limitations as a defense to any demands hereunder is hereby waived to the full extent permitted by law.

**6.** <u>Governing Law.</u> This Note shall be governed by construed and under the laws of the New York, as applied to agreements among New York residents, made and to be performed entirely within the New York, without giving effect to conflicts of laws principles.

**7.** <u>Amendment; Waiver.</u> Any term of this Note may be amended or waived with the written consent of Borrower and the Lender.

**8.** <u>Successors and Assigns.</u> The provisions of this Note shall inure to the benefit of and be binding on any successor to Borrower and shall extend to any holder hereof.

**9.** <u>No Set-Off or Counterclaim.</u> This Note is not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Holder, including the defense of usury, and the operation of any of the terms of the Loan, or the exercise of any right thereunder, will not render the Note unenforceable, in whole or in part, or be subject to a right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Holder has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

**10.** <u>Transfer.</u> Subject to the restrictions on transfer within the terms of the Agreement, this Note may be transferred only upon its surrender to the Borrower for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Borrower. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Borrower's obligation to pay such interest and principal.

**IN WITNESS WHEREOF**, the parties have executed this **PROMISSORY NOTE** as of the date first written above.

BLUE EAGLE INDUSTRIES, INC.

Per: ______________________

David Thornton, CEO

# EXHIBIT

# D

LOGAN RUSSACK, LLC
Attorneys at Law
SUITE 308, 2530 RIVA ROAD • ANNAPOLIS, MARYLAND 21401
Tele 410 571 2780
Fax 410 571 2798

March 8, 2007

Blue Eagle Industries, Inc.
2536 Youngs Drive
Haymarket, Virginia 20169

RE: Promissory Notes of Blue Eagle Industries, Inc
1. Principal Sum of $75,000.00
2. Principal Sum of $125,000.000

Dear Mr. Thornton:

As you are aware, the loans to Blue Eagle Industries are not being renewed. This is a reminder that the notes are due on April 28, 2007. Pursuant to a Note signed on April 27, 2005, by Blue Eagle Industries' CEO, David Thornton, on a Principal Sum of $75,000.00, please pay the amount now due, on the Note, of $84,571.00, on or before April 28, 2007. Please make the check payable to Logan Russack, LLC, in trust for Mr. Robert Lee Jones and Mrs. Jones, jointly.

Also, in accordance with the Note signed on April 27, 2005 by the CEO, David Thornton, on the Principal Sum of $125,000.00, payment is now due, on or before April 28, 2007, in the amount of $154,688.00. Please make the check payable to Fiserve Trust Company for the benefit of Mr. Robert Lee Jones.

The above amounts reflect the interest due on these Notes. Please forward both checks to the attention of the undersigned. Your expediency in this matter is appreciated.

Very truly yours,

Tate M. Russack

TMR: asm
Cc: Bob Jones
Cc: Craig Watson

From: Origin ID: (479)435-0434
Joyce Copeland
Blue Eagle Industries, Inc.
167 Eagle School Road

Martinsburg, WV 25401

FedEx Express

E

Ship Date: 04MAY06
ActWgt: 1 LB
System#: 8409126/INET2400
Account#: S *********

REF: Financial Statements



Delivery Address Bar Code

SHIP TO: (410)571-2980 BILL SENDER

**Tate Russack**
**Logan Russack**
**2530 Ruva Rd**

**Annapolis, MD 21401**



**STANDARD OVERNIGHT**

**FRI**
Deliver By:
05MAY06

TRK# 7904 1815 9038 FORM 0201

BWI A2

21401 -MD-US

**18 ADWA**



Shipping Label Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

H 07-1087 RCL

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS** ROBERT LEE JONES
CAROLYN M. MARTIN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

11001

**DEFENDANTS**
BLUE EAGLE INDUSTRIES, INC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ________
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TF

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
JAMES R. SCHRAF, LOGAN RUSSACK, LLC
2530 RIVA ROAD, SUITE 308
ANNAPOLIS, MD 21401 (410) 571-278

A'

Case: 1:07-cv-01087
Assigned To : Lamberth, Royce C.
Assign. Date : 6/18/2007
Description: Contract

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** ... FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**☐ A. *Antitrust***

- ☐ 410 Antitrust

**☐ B. *Personal Injury/ Malpractice***

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**☐ C. *Administrative Agency Review***

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— ० —

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☒ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☒ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

BREACH OF CONTRACT; DEFAULT ON PROMISSORY NOTE 28 USC 1332

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 DEMAND $ $237,696 Check YES only if demanded in complaint JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☒ NO If yes, please complete related case form.

DATE 6/18/07 SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.